## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Kenneth Macek, Matthew Harner, Avi Setton, Lionel Alicea, and Robert Walker, individually and on behalf of all others similarly situated,

        Plaintiffs,

      v.

DraftKings, Inc.; Crown PA Gaming Inc. d/b/a DraftKings; Golden Nugget Online Gaming LLC,

        Defendants.

Civil Action No. 2:25-cv-01995-JFL

Judge Joseph F. Leeson, Jr.

### DEFENDANTS' MOTION TO DISMISS
### PLAINTIFFS' CLASS ACTION COMPLAINT PURSUANT TO F.R.C.P. 12(b)

Defendants DraftKings Inc., Crown PA Gaming Inc. d/b/a DraftKings, and Golden Nugget Online Gaming LLC respectfully move to dismiss Plaintiffs Kenneth Macek, Matthew Harner, Avi Setton, Lionel Alicea, and Robert Walker's ("Plaintiffs") Class Action Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). The basis for the relief requested in this motion is set forth in the accompanying memorandum of law. A proposed form of order is attached.

Dated:  June 24, 2025

By: /s/ Melissa L. Perry

Michael J. Engle (PA ID  85576)
Melissa L. Perry (PA ID 326984)
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
Telephone: (215) 564-8000
Email:      mengle@stradley.com
          mperry@stradley.com

Richard R. Patch (admitted pro hac vice)
Clifford E. Yin (admitted pro hac vice)
Christopher J. Wiener (admitted pro hac vice)
Sarah E. Peterson (admitted pro hac vice)
Laura Seegal (admitted pro hac vice)
COBLENTZ PATCH DUFFY & BASS LLP

One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: 415-391-4800
Facsimile:  415-989-1663
Email:      ef-rrp@cpdb.com
            ef-cey@cpdb.com
            ef-cjw@cpdb.com
            ef-sep@cpdb.com
            ef-lrs@cpdb.com

*Attorneys for Defendants DraftKings Inc. (erroneously sued as "DraftKings, Inc."); Crown PA Gaming Inc. d/b/a DraftKings; Golden Nugget Online Gaming LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Kenneth Macek, Matthew Harner, Avi Setton, Lionel Alicea, and Robert Walker, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DraftKings, Inc.; Crown PA Gaming Inc. d/b/a DraftKings; Golden Nugget Online Gaming LLC,<br><br>Defendants. | Civil Action No. 2:25-cv-01995-JFL<br><br>Judge Joseph F. Leeson, Jr. |

## ORDER

    **AND NOW**, this _____ day of _____, 2025, upon consideration of the Motion of Defendant DraftKings Inc., Crown PA Gaming Inc. d/b/a DraftKings, and Golden Nugget Online Gaming LLC to Dismiss Plaintiffs' Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) (the "Motion"), and Plaintiffs' response thereto, if any, and for good cause shown, it is hereby **ORDERED** that the Motion is **GRANTED** and Plaintiffs' Class Action Complaint is **DISMISSED** in its entirety **WITH PREJUDICE** as to Defendants DraftKings Inc., Crown PA Gaming d/b/a DraftKings, and Golden Nugget Online Gaming LLC.

                                                       BY THE COURT:

_____
The Honorable Joseph F. Leeson, Jr., U.S.D.J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Kenneth Macek, Matthew Harner, Avi Setton,
Lionel Alicea, and Robert Walker, individually
and on behalf of all others similarly situated,

        Plaintiffs,

    v.

DraftKings, Inc.; Crown PA Gaming Inc. d/b/a
DraftKings; Golden Nugget Online Gaming LLC,

        Defendants.

Civil Action No. 2:25-cv-01995-JFL

Judge Joseph F. Leeson, Jr.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLANTIFFS' CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

Page(s)

I.     INTRODUCTION ............................................................................................... 1

II.    FACTUAL BACKGROUND............................................................................... 2

III.   STATEMENT OF QUESTIONS INVOLVED................................................... 5

IV.   SUMMARY OF ARGUMENT ........................................................................... 7

V.    LEGAL STANDARD.......................................................................................... 9

VI.   ARGUMENT .................................................................................................... 11

   A.   The Negligence and IIED Claims Fail (Counts 1, 2, 5, 12)........................... 11

       1.    The Gaming Act Bars Counts 2 (Negligence) and Count 12 (IIED)............. 11

       2.    Plaintiffs' Negligence Claims Fail (Counts 1, 2, and 5). .............................. 12

           (a)    Plaintiffs Fail to Allege a Legal Duty That Defendants Owed to Them. ............ 12

           (b)    The Complaint Does Not Adequately Allege Cognizable Injury Caused by Purported Negligence....................................................................... 16

           (c)    Counts 1 and 2 Fail Because Plaintiffs Plead Intentional Conduct. ..................... 16

           (d)    The Claim Titled "Failure To Warn" Fails for Independent Reasons (Count 5).. 17

       3.    The IIED Claim Fails (Count 12). ................................................................. 18

           (a)    Plaintiffs Fail to Allege Extreme and Outrageous Conduct................................. 19

           (b)    Plaintiffs Fail to Allege Physical Harm. ............................................................. 20

   B.   The UTPCPL and Common Law Fraud Claims Fail (Counts 3, 4, 6, 7, 8, 9, and 10)..... 20

       1.    The UTPCPL Claims Fail (Counts 3, 6, and 7). .......................................... 21

           (a)    Plaintiffs Fail to Plead a Material Misrepresentation or Deceptive Act. .............. 22

           (b)    Plaintiffs Do Not Plead What Advertisements or Promotional Offers They Saw.26

           (c)    Plaintiffs Do Not Plausibly Plead Reliance. ....................................................... 30

           (d)    Plaintiffs Fail to Plead an Ascertainable Loss. ................................................... 31

           (e)    Plaintiffs Fail to Plead a Causal Connection....................................................... 32

           (f)    Plaintiffs Cannot Base a UTPCPL Claim (Count 6) on the Vague Term "No Sweat" Because It Is Puffery. ................................................................. 33

     2.    The Common Law Fraud Claims Fail (Counts 4, 8, 9, and 10)...................................34

        (a)    Plaintiffs Fail to Meet Rule 9(b)'s Heightened Pleading Requirements...............34

        (b)    The New Customer Promotion Fraud Claim (Count 9) Is Time-Barred. .............35

  C.    The Unjust Enrichment Claim Fails (Count 11). ...............................................................36

  D.    The Conversion Claim Fails (Count 13). .........................................................................37

  E.    Plaintiffs Lack Standing to Seek Injunctive Relief..........................................................38

VII.    CONCLUSION................................................................................................................38

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Aetna Inc. v. Insys Therapeutics, Inc.*,
  324 F. Supp. 3d 541 (E.D. Pa. 2018) ....................................................................16

*Allen v. Caesars Ent. Corp.*,
  No. 4:23-CV-00989-MTS, 2023 WL 7181654 (E.D. Mo. Nov. 1, 2023) ..............15

*Andrews v. Fullington Trail Ways, LLC*,
  No. 3:15-228, 2016 WL 3748579 (W.D. Pa. July 8, 2016)...................................17

*Antar v. BetMGM, LLC et al.*,
  No. 24-1364, 2025 WL 1219316 (3rd Cir. Apr. 28, 2025)........................... *passim*

*Aronson v. GreenMountain.com*,
  2002 Pa. Super. 316, 809 A.2d 399 (2002)...........................................................30

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................................10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................................10

*Bellardine v. Ross*,
  No. 17-2264, 2018 WL 3642223 (E.D. Pa. Aug. 1, 2018) ....................................34

*Bessemer Sys. Fed. Credit Union v. Fiserv Sols., LLC*,
  472 F. Supp. 3d 142 (W.D. Pa. 2020).......................................................26, 28, 30

*Beyer et al. v. DraftKings Inc.*,
  No. 1:25-cv-01336 (N.D. Ill. Feb. 6, 2025) ................................................2, 9, 39

*Brandt v. Bos. Sci. Corp.*,
  792 N.E.2d 296 (Ill. 2003)......................................................................................18

*Briggs v. Macy's Inc.*,
  329 F.R.D. 82 (M.D. Pa. 2018)...............................................................................35

*Burke v. Barr*,
  No. 5:22-CV-3464, 2025 WL 868617 (E.D. Pa. Mar. 19, 2025) ..........................19

*Castrol Inc. v. Pennzoil Co.*,
  987 F.2d 939 (3d Cir. 1993)....................................................................................33

*Commonw. by Shapiro v. Golden Gate Nat'l Senior Care LLC,*
  648 194 A.3d 1010 (Pa. 2018) .........................................................................21, 33

*Corsale v. Sperian Energy Corp.,*
  412 F. Supp. 3d 556 (W.D. Pa. 2019) ...........................................................31

*D'Ambrosio v. Rajala,*
  No. 24-cv-00678, 2025 WL 1383286 (N.D. Ill. May 13, 2025)....................18

*DeLeon et al. v. DraftKings Inc.,*
  No. 1:25-cv-00644-DLC (S.D.N.Y. Jan. 22, 2025)........................................9

*DiSalvio v. Lower Merion High Sch. Dist.,*
  158 F. Supp. 2d 553 (E.D. Pa. 2001) ............................................................17

*Eberhart v. Amazon.com, Inc.,*
  325 F. Supp. 3d 393 (S.D.N.Y. 2018) ...........................................................18

*Fed. Trade Comm'n v. Am. Future Sys., Inc.,*
  No. CV 20-2266, 2024 WL 1376026 (E.D. Pa. Mar. 29, 2024).....................22

*First Liberty Ins. Corp. v. Haier US Appliance Sols., Inc.,*
  No. CV 23-2268-KSM, 2023 WL 5832163 (E.D. Pa. Sept. 8, 2023) ............26

*Fowler v. UPMC Shadyside,*
  578 F.3d 203 (3d Cir. 2009)...........................................................................10

*Frederico v. Home Depot,*
  507 F.3d 188 (3d Cir. 2007)...........................................................................10

*Fusco v. Uber Techs., Inc.,*
  No. 17-00036, 2018 WL 3618232 (E.D. Pa. July 27, 2018) ..........................34

*Hakimoglu v. Trump Taj Mahal Associates,*
  70 F.3d 291 (3rd Cir. 1995) ...........................................................................13

*Halpern v. Ricoh U.S.A., Inc.,*
  2023 PA Super 139, 299 A.3d 1023 (2023), *appeal granted,* 314 A.3d 513 (Pa. 2024).........23

*Humphries v. Pa. State Univ.,*
  492 F. Supp. 3d 393 (M.D. Pa. 2020) ............................................................12

*Jackson v. Airbnb, Inc.,*
  639 F. Supp. 3d 994 (C.D. Cal. 2022) ...........................................................18

*Jacobs v. Meta Platforms, Inc.,*
  No. 22CV005233, 2023 WL 2655586 (Cal. Super. Ct. Mar. 10, 2023).................18

*Jane Doe No. 1 v. Uber Techs., Inc.*,
  79 Cal.App.5th 410 (2022) ........................................................................18

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig.*,
  903 F.3d 278 (3d Cir. 2018)...............................................................10, 38

*Kamara v. Columbia Home Loans, LLC*,
  654 F. Supp. 2d 259 (E.D. Pa. 2009) ......................................................27

*Kane v. Chester Cnty. Dep't of Child., Youth & Families*,
  10 F. Supp. 3d 671 (E.D. Pa. 2014) .........................................................20

*Karden Constr. Servs., Inc. v. D'Amico*,
  219 A.3d 619 (Pa. Super. Ct. 2019).........................................................36

*Kimmel v. Peterson*,
  565 F. Supp. 476 (E.D. Pa. 1983) ......................................................19, 20

*Kovalev v. Lidl US, LLC*,
  647 F. Supp. 3d 319 (E.D. Pa. 2022) ......................................................33

*Levy–Tatum v. Navient and Sallie Mae Bank*,
  No. CIV. A.15–3794, 2016 WL 75231 (E.D. Pa. Jan. 7, 2016) ..............31

*Lloyd v. Covanta Plymouth Renewable Energy, LLC*,
  517 F. Supp. 3d 328 (E.D. Pa. 2021) ......................................................16

*Logan v. Ameristar Casino Council Bluffs, Inc.*,
  185 F. Supp. 2d 1021 (S.D. Iowa 2002) ..................................................15

*Mason v. Mach. Zone, Inc.*,
  140 F. Supp. 3d 457 (D. Md. 2015) .........................................................14

*McLaughlin v. Bayer Corp.*,
  172 F. Supp. 3d 804 (E.D. Pa. 2016) ......................................................35

*McLean v. Big Lots Inc.*,
  542 F. Supp. 3d 343 (W.D. Pa. 2021)..........................................22, 24, 31

*Merrill v. Trump Indiana, Inc.*,
  320 F.3d 729 (7th Cir. 2003) ...................................................................15

*Moore v. Solanco Sch. Dist.*,
  471 F. Supp. 3d 640 (E.D. Pa. 2020) ..........................................12, 16, 17

*Morse v. Lower Merion Sch. Dist.*,
  132 F.3d 902 (3d Cir. 1997)......................................................................10

*NOLA 180 v. Harrah's Operating Co.*,
    94 So. 3d 886 (La. Ct. App. 2012) ........................................................................ 15

*Okane v. Tropicana Ent., Inc.*,
    No. 12-6707, 2013 WL 56088 (E.D. Pa. Jan. 3, 2013) ........................................... 14

*Palek v. State Farm Fire and Cas. Ins., Co.*,
    535 F. Supp. 3d 382 (W.D. Pa. 2021) .................................................................... 30

*Parkinson v. Guidant Corp.*,
    315 F. Supp. 2d 741 (W.D. Pa. 2004) .................................................................... 18

*Perri v. Prestigious Homes, Inc.*,
    No. L-4169-08, 2012 WL 95564 (N.J. Super. Ct. App. Div. Jan. 13, 2012) .......... 34

*Plumbers' Loc. Union No. 690 Health Plan v. Apotex Corp.*,
    No. CV 16-665, 2017 WL 4235773 (E.D. Pa. Sept. 25, 2017) ............................. 36

*Polt v. Sandoz, Inc.*,
    462 F. Supp. 3d 566 (E.D. Pa. May 26, 2020) ...................................................... 14

*Ranalli v. Etsy.com, LLC*,
    570 F. Supp. 3d 301 (W.D. Pa. 2021) ............................................................. 24, 25

*Reville Tire Co. v. Ranalli*,
    No. 15-1036, 2017 WL 4224658 (W.D. Pa. Sept. 21, 2017) ................................. 34

*Ristic v. Mach. Zone, Inc.*,
    No. 15-CV-8996, 2016 WL 4987943 (N.D. Ill. Sept. 19, 2016) ........................... 14

*Roach v. Navy Fed. Credit Union*,
    No. 24-CV-6408, 2025 WL 257128 (E.D. Pa. Jan. 21, 2025) ............................... 38

*Rodgers v. Christie*,
    795 F. App'x 878 (3d Cir. 2020) ........................................................................... 18

*Roethlein v. Portnoff L. Assocs., Ltd.*,
    623 Pa. 1 (Pa. 2013) ............................................................................................. 36

*Romeo v. Pittsburgh Assocs.*,
    787 A.2d 1027 (Pa. 2001) ..................................................................................... 18

*Seldon v. Home Loan Servs., Inc.*,
    647 F. Supp. 2d 451 (E.D. Pa. 2009) .................................................................... 22

*Sheridan v. NGK Metals Corp.*,
    609 F.3d 239 - 644 (3d Cir. 2010) ........................................................................ 17

*Sherman v. Harrah's New Orleans Casino*,
No. 06-2379, 2008 WL 11509255 (E.D. La. Feb. 12, 2008)..................................15

*Simpson v. Phila. Sheriff's Off.*,
351 F. Supp. 3d 919 (E.D. Pa. 2019) .....................................................................19

*SM Kids, LLC v. Google LLC*,
963 F.3d 206 (2d Cir. 2020)...................................................................................10

*Smith v. Linn*,
563 A.2d 123 (Pa. Super. Ct. 1989)........................................................................18

*Spear v. Fenkell*,
No. CIV.A. 13-02391, 2015 WL 518229 (E.D. Pa. Feb. 6, 2015) ........................33

*Stevens v. MTR Gaming Grp., Inc.*,
788 S.E.2d 59 (W. Va. 2016)..................................................................................15

*Sullivan v. Truist Bank*,
715 F. Supp. 3d 668 (E.D. Pa. 2024) ....................................................................15

*Suniaga v. Downingtown Area Sch. Dist.*,
765 F. Supp. 3d 413 ...............................................................................................19

*Tatum v. Takeda Pharms. N. Am., Inc.*,
No. 12-1114, 2012 WL 5182895 (E.D. Pa. Oct. 19, 2012) ...................................37

*Travelers Indem. Co. v. Cephalon, Inc.*,
620 F. App'x 82 (3d Cir. 2015) ..............................................................................34

*Universal Premium Acceptance Corp. v. York Bank & Tr. Co.*,
69 F.3d 695 (3d Cir. 1995).....................................................................................37

*Vargus v. Pitman Mfg. Co.*,
675 F.2d 73 (3rd Cir. 1982) ...................................................................................14

*Vassalotti v. Wells Fargo Bank, N.A.*,
732 F. Supp. 2d 503 (E.D. Pa. 2010) .....................................................................21

*Weinberg v. Sun Co.*,
565 Pa. 612 (2001) ...........................................................................................*passim*

*Whitaker v. Herr Foods, Inc.*,
198 F. Supp. 3d 476 (E.D. Pa. 2016) .....................................................................37

*Youngs et al. v. DraftKings, Inc. et al*,
No. 2:25-cv-00179-SRC-JRA(D.N.J. April 17, 2025) ............................................9

*Zafarana v. Pfizer, Inc.*,
    724 F. Supp. 2d 545 (E.D. Pa. 2010) ...................................................................37

*Ziencik v. Snap, Inc.*,
    No. CV 21-7292-DMG, 2023 WL 2638314 (C.D. Cal. Feb. 3, 2023) ....................18

*Zimmerman v. Highmark, Inc.*,
    No. 2:23-CV-250-NR, 2025 WL 1220364 (W.D. Pa. Apr. 28, 2025).....................10

**Statutes & Rules**

73 P.S. § 201-1, *et seq*.................................................................................................20

73 P.S. § 201–2(4)(xxi) .................................................................................................21

73 P.S. § 201-2(4)(v) .....................................................................................................21

73 P.S. § 201-2(4)(ix) ....................................................................................................21

Fed. Rule of Civ. Proc. 12(b)(1) and (6).........................................................1, 9, 10, 33

Fed. Rule Civ. Proc. 9(b) ........................................................................................ *passim*

Pa. R. Civ. P. 1019(b) ....................................................................................................34

**Other Authorities**

Restatement (Second) of Torts § 388..............................................................................18

Defendants DraftKings Inc., Crown PA Gaming Inc. d/b/a DraftKings, and Golden Nugget Online Gaming LLC submit this Memorandum of Law in support of their Motion to Dismiss Plaintiffs' Class Action Complaint (the "Motion") Pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

## I.    <u>INTRODUCTION</u>

Defendants DraftKings Inc. and Crown PA Gaming Inc. d/b/a DraftKings (collectively, "DraftKings") operate an online casino ("DK Casino") and an online sportsbook platform ("DK Sportsbook") in Pennsylvania. Defendant Golden Nugget Online Gaming LLC ("Golden Nugget" and, collectively with DraftKings, "Defendants"), a subsidiary of DraftKings, operates a separate online casino in Pennsylvania ("Golden Nugget Casino"). Plaintiffs Robert Walker ("Walker"), Kenneth Macek ("Macek"), Matthew Harner ("Harner"), Avi Setton ("Setton"), and Lionel Alicea's ("Alicea") (collectively, "Plaintiffs") Class Action Complaint (the "Complaint") purports to bring a class action challenging a promotion offered by DK Casino and Golden Nugget Casino, and two DK Sportsbook promotions (collectively, the "Promotions"). In the sprawling yet deficient Complaint, Plaintiffs plead claims pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), and for negligence, intentional infliction of emotional distress ("IIED"), intentional misrepresentation, fraudulent inducement, unjust enrichment, and conversion.

In summary, Plaintiffs allege that DraftKings and/or Golden Nugget misled them through advertisements for the Promotions, promising bonus bets or deposit matches, purportedly causing Plaintiffs to bet more than they otherwise would have and develop gaming addictions. Certain Plaintiffs also allege that DraftKings and Golden Nugget should have prevented them from betting on DraftKings' and Golden Nugget's platforms because they allegedly displayed signs of gambling addiction and/or self-excluded from online sports betting or casino play through the Pennsylvania self-exclusion list. For a number of reasons, all of these claims fail.

Plaintiffs do not allege which DraftKings promotions they purportedly saw or relied on— much less come close to satisfying Rule 9(b)'s heightened pleading requirements for their

common law fraud claims. The Promotions referenced in the Complaint were subject to express conditions that Plaintiffs concede were disclosed to them *in full*. Further, licensed gaming operators like DraftKings and Golden Nugget are immune from liability for harm that results from gaming by self-excluded individuals. For these and other reasons discussed below, the Court should dismiss the Complaint in its entirety.

## II.   FACTUAL BACKGROUND

Plaintiffs are residents of Pennsylvania. Walker allegedly became a DraftKings customer in 2019 or 2020, when he began using DK Sportsbook. Complaint ("Compl.") ¶ 40. Alicea allegedly became a customer of DraftKings and Golden Nugget in 2024 and played DK Casino and Golden Nugget Casino. *Id*. ¶ 44. Setton allegedly became a DraftKings customer in 2019 and played on DK Casino and DK Sportsbook. *See id*. ¶ 43. Harner alleges he was a gambling addict before he became a customer of DraftKings and Golden Nugget in 2024, and that he was on Pennsylvania's casino self-exclusion list beginning in late 2022. *Id*. ¶¶ 42, 331. He alleges that he played on DK Casino and Golden Nugget Casino. *Id*. ¶¶ 42, 186. Macek allegedly has been a DraftKings customer since 2020 and has played on both DK Sportsbook and DK Casino since then. *Id*. ¶ 41. Macek purportedly stopped gambling several times but allegedly resumed after receiving promotional offers from DraftKings and Golden Nuggets. *Id*. ¶¶ 261-62, 282. Macek allegedly opted into Pennsylvania's five-year self-exclusion program in January 2025. *Id.* ¶ 293. He alleges that after opting into Pennsylvania's self-exclusion program, he received a DraftKings mailer at his home address advertising a promotion on DK Casino. *Id.* ¶ 295. Macek did not act on the mailer. *See id.*

Because of their frequent activity on DraftKings' site, Plaintiffs Macek, Setton, and Harner allegedly received direct outreach in the form of "custom offers" and promotions, and were invited into DraftKings' VIP program. *Id*. ¶¶ 265, 298, 303, 305. Plaintiff Walker also purportedly received direct outreach. *Id*. ¶ 197.

The Complaint concerns three Promotions:

(1) The New Customer Promotion. Plaintiffs allege that the New Customer Promotion

offers a bonus of a deposit match up to $1,000 in site credits ("DK Dollars") to new DK Sportsbook customers who meet certain conditions. Among other things, the new customer must deposit funds into their DraftKings account and place the required type, number and amount of bets within 90 days of first signing up for a DK Sportsbook account. *See id*. ¶¶ 223, 236, 241, 255.

Walker alleges that, "[a]round 2019, when DraftKings's online sportsbook became available in Pennsylvania," he "saw ads for new sportsbook user promotions including a deposit match promotion on a variety of digital platforms" and "took the opportunity to begin sports betting." *Id*. ¶ 259. Macek alleges that he "learned of the sportsbook promotions from media advertisements as well as direct email and text correspondence" and "began using [] DraftKings Sportsbook . . . offerings in November of 2020." *Id.* ¶¶ 41, 260. However, the Complaint does not include any of the advertisements that these Plaintiffs allegedly saw. The Complaint includes screenshots of two Twitter posts from 2022 and an undated screenshot purporting to be "typical" of television and digital media advertisements in Pennsylvania "during the class period" – without any allegation that Walker or Macek saw those particular advertisements. *Id*. ¶ 243 (Figs. 11-13). Setton is alleged to have "participated in every one of the DraftKings' misleading promotional offers" (*id*. ¶ 299), but he does not allege that he saw or relied on any advertisements for the New Customer Promotion.

Macek, Walker, and Setton allege that after opting into the New Customer Promotion and "satisfying some of the playthrough requirements," they were "surprised when they did not get their deposit matched in cash, but instead only got a portion of it matched in DK Dollars[.]" *Id.* ¶ 189.

(2) The No Sweat Promotion. Plaintiffs allege that this promotion offers a bonus bet to a customer who opts into the promotion, deposits a certain amount of funds, and then places a bet on DK Sportsbook. If the bet loses, DraftKings provides the customer with a bonus bet equal to the amount of the bet that lost, thereby providing the customer with an opportunity to place a second bet in the same amount as the lost bet. *Id*. ¶¶ 201, 202, 218 (Fig. 9).

Plaintiffs Macek, Setton, and Walker allege that DraftKings emailed and texted them about the No Sweat Promotion. *Id.* ¶ 197. They vaguely allege that they "opt[ed] in to the promotion on the basis of DraftKings's advertising that led them to believe they could place a bet with no risk." *Id*. ¶ 217. Walker alleges that he opted into the promotion "after seeing numerous advertisements on television and social media." *Id*. ¶ 40. These advertisements are not described in the Complaint. Plaintiffs do not allege that they viewed or relied upon any of the advertisements for the No Sweat Promotion provided in the Complaint, which purport to include: screenshots of two Twitter posts dated July 2022 and April 2022, an advertisement for "risk free" bets purporting to be from DraftKings' website dated April 2025 (even though DraftKings stopped using that term in 2022), an advertisement from "various digital advertising media" dated March 2024, and screenshots of the DraftKings app interface from November and December 2024. *Id.* ¶¶ 196 (Fig. 4), 213 (Figs. 5-7), 216 (Fig. 8), 218 (Fig. 9), 225 (Fig. 10). Macek alleges that he participated in multiple No Sweat Promotions, yet he "was surprised and dismayed to discover [they] were not actually risk-free." *Id.* ¶ 263.

(3) <u>The Casino Promotion</u>. Plaintiffs allege that this promotion offers bonus funds ("Bonus Funds") to a customer who opts into the Casino Promotion, deposits funds, and meets applicable playthrough requirements (the "Playthrough Requirements") on DK Casino or Golden Nugget Casino. Upon meeting those requirements, the Bonus Funds can be used to make additional bets. *Id*. ¶ 160 (Fig. 3).

Plaintiffs generally allege that they saw "multiple ads" for the Casino Promotion in different places over a period of several years, including in email outreach, on billboards, the DraftKings' app, television, and social media feeds, but they do not allege when they saw those advertisements, what those advertisements said, or which advertisements they relied on. *Id*. ¶¶ 144, 154, 156 (Fig. 1), 158, 159 (Fig. 2), 160 (Fig. 3), 161-62, 276. The Complaint instead purports to depict three "example advertisement[s]" and a description of one television advertisement, all of which Plaintiffs claim are "substantially similar" to or "like" the advertisements they saw and relied on. *Id*. ¶¶ 156 (Fig. 1), 159 (Fig. 2), 160 (Fig. 3), 186. These

sample advertisements differ in important ways, including the content, dates, and which Defendant promoted them.

Plaintiffs Macek, Setton, Alicea, and Harner allege that they were "all deceived by this promotion, deposited money and opted into it believing they would have their deposits matched, and lost money as a result." *Id*. ¶ 185. Macek alleges that he opted into the Casino Promotion several times, when DraftKings and Golden Nugget would "entice him back to the site with a misleading casino promotion." *Id*. ¶¶ 261, 284. Setton alleges that he was "frequently was induced to deposit and gamble by this casino promotion." *Id*. ¶ 301.

Plaintiffs plead claims pursuant to the UTPCPL, and for negligence, IIED, intentional misrepresentation, fraudulent inducement, unjust enrichment, and conversion. They seek unspecified injunctive relief, among other remedies.

## III.   STATEMENT OF QUESTIONS INVOLVED

1.   Have Plaintiffs failed to state claims for negligence and intentional infliction of emotional distress (Counts 1, 2, 5, and 12) because: (i) the Pennsylvania State Gaming Act ("Gaming Act") immunizes licensed gaming entities like DraftKings from liability from any harm that results from gaming by self-excluded individuals; (ii) Plaintiffs fail to allege a legal duty DraftKings owed to them; and (iii) Plaintiffs fail to adequately allege cognizable injury?

*Suggested Answer:      Yes.*

2.   Have Plaintiffs failed to state claims for negligence (Counts 1 and 2) because they allege the purportedly negligent conduct was "intentional"?

*Suggested Answer:      Yes.*

3.   Should the Court dismiss Plaintiffs' "Failure to Warn" claim (Count 5) because no such claim exists in this context under Pennsylvania law?

*Suggested Answer:      Yes.*

4.   Should the Court dismiss Plaintiffs' Intentional Infliction of Emotional Distress ("IIED") claim (Count 12) for failure to state a claim because: (i) the conduct alleged is not extreme or outrageous; and (ii) Plaintiffs have failed to allege physical harm?

*Suggested Answer:     Yes.*

5.    Have Plaintiffs failed to state claims regarding certain DraftKings promotions under the Unfair Trade Practices and Consumer Protection ("UTPCPL") (Counts 3, 6, and 7) because Plaintiffs: (i) fail to adequately plead such claims; (ii) the terms of each of the Promotions contain the very information that Plaintiffs allege was misrepresented, suppressed, or concealed; and (iii) Plaintiffs do not allege facts identifying the purported misrepresentations?

*Suggested Answer:     Yes.*

6.    Should the Court dismiss Plaintiffs' UTPCPL claims (Counts 3, 6, and 7) because: (i) Plaintiffs have not plausibly alleged that they relied on the advertisements in the Complaint (or on any advertisements at all); and (ii) Plaintiffs fail to plead an ascertainable loss?

*Suggested Answer:     Yes.*

7.    Should the Court dismiss Plaintiffs' UTPCPL (Counts 3, 6 and 7) because Plaintiffs fail to plead a causal nexus between the alleged unlawful conduct and the alleged ascertainable loss from the Promotions?

*Suggested Answer:     Yes.*

8.    Should the Court dismiss Plaintiffs' UTPCPL claim for the No Sweat Promotion (Count 6) to the extent it is based on use of the term "no sweat," because that term is non-actionable and non-deceptive puffery?

*Suggested Answer:     Yes.*

9.    Should Plaintiffs' common law fraud claims (Counts 4, 8, 9, and 10) be dismissed because Plaintiffs do not plausibly allege: (i) any material misrepresentation; (ii) justifiable reliance; or (iii) causation under the heightened pleading standard of Rule 9(b)?

*Suggested Answer:     Yes.*

10. Is Plaintiffs' New Customer Promotion fraud claim (Count 9) time-barred?

*Suggested Answer:     Yes.*

11. Have Plaintiffs failed to state a claim for unjust enrichment (Count 11) because: (i) the claim is derivative of the UTPCPL and common law fraud claims and must be dismissed along

with them; and (ii) Plaintiffs received and used the services they complain about?

*Suggested Answer:*     *Yes.*

12. Should the Court dismiss Plaintiff Setton's conversion claim (Count 13) because he has not alleged facts sufficient to state a claim?

*Suggested Answer:*     *Yes.*

13. Do Plaintiffs lack standing to seek injunctive relief because they have failed to plead imminent future harm?

*Suggested Answer:*     *Yes.*

## IV.   <u>SUMMARY OF ARGUMENT</u>

All of Plaintiffs' claims should be dismissed for multiple independent reasons:

1. <u>**Statutory Immunity**</u>: Counts 2 and 12, for negligence and IIED, respectively, must be dismissed because even if Plaintiffs successfully self-excluded from DraftKings' and Golden Nugget's services, Pennsylvania law squarely immunizes licensed gaming entities like DraftKings and Golden Nugget from liability from any harm that results from gaming by self-excluded individuals. 4 Pa. S.C. § 1516.

2. <u>**No Cognizable Legal Duty:**</u> The negligence and "failure to warn" claims (Counts 1, 2, and 5) must be dismissed because, as the Third Circuit recently affirmed, there is no "duty of care on casinos over problem gamblers." *Antar v. BetMGM, LLC et al.*, No. 24-1364, 2025 WL 1219316 at * 4 (3rd Cir. Apr. 28, 2025). No court applying Pennsylvania law has ever recognized any of the duties alleged by Plaintiffs or imposed them on a gaming operator, nor should the Court do so here.

3. <u>**Other Pleading Failures Defeat the Negligence Claims**</u>: The negligence claims (Counts 1 and 2) should also be dismissed for failure to allege physical harm or harm to property, which is a required element of these claims under Pennsylvania law. These claims also fail because, according to Plaintiffs' allegations, DraftKings' purportedly negligent conduct was "intentional" (Compl. ¶ 371), and Pennsylvania law does not allow recovery in negligence for intentional torts. Finally, Plaintiffs' "failure to warn" claim (Count 5) should be dismissed because there is no

such claim under Pennsylvania law unless the defendant has undertaken the responsibility to make the warning, which Plaintiffs do not allege. To the extent Plaintiffs intended to assert a products-liability claim, that theory fails because DraftKings and Golden Nugget provide a service, not a product.

4. **No Physical Harm or Outrageous Conduct**: The IIED claim (Count 12) fails because the Plaintiffs do not allege conduct sufficient to satisfy the extraordinarily high bar for outrageousness, and Plaintiffs further have not alleged any physical harm.

5. **Clear and Full Disclosures**: The UTPCPL and common law fraud claims fail because DraftKings and/or Golden Nugget disclosed the terms and conditions for each of the Promotions allegedly presented to Plaintiffs, and Plaintiffs do not allege that DraftKings or Golden Nugget omitted any language, let alone material language, concerning the Promotions' terms and conditions, or that they were otherwise false or deceptive in any way. Indeed, Plaintiffs allege that they continued to opt into the Casino Promotion and No Sweat Promotion even after they understood the terms. By Plaintiffs' own pleadings, DraftKings and Golden Nugget did not misrepresent or conceal anything.

6. **No Plausible Allegations of Misrepresentations or Reliance**: Plaintiffs do not allege facts identifying the purported misrepresentations, as required to support their UTPCPL and common law fraud claims. Plaintiffs describe various advertisements and promotional materials but do not allege which ones they saw (if any) or how they relied on them. Additionally, any reliance on the "no sweat" language is necessarily unreasonable because it is puffery.

7. **No Ascertainable Loss and No Causation:** Plaintiffs fail to plead an ascertainable loss as required to state a claim under the UTPCPL, because the Complaint is silent as to how any deposits made, winnings received, or rewards earned (or not earned) factor into the damages calculations for these claims. Likewise, Plaintiffs fail to plead that any loss was caused by the alleged conduct, rather than by the natural and expected risks of gaming.

8. **Failure to Plead With Particularity (Rule 9(b))**: Plaintiffs' common law fraud claims (Counts 4, 8, 9, and 10) do not come close to meeting the heightened pleading standard of

Federal Rule of Civil Procedure 9(b) for the reasons explained above.

9. **Statute of Limitations:** Count 9 (intentional misrepresentation) is barred by the two-year statute of limitations for fraud claims because the Complaint alleges that all of the Plaintiffs who opted into the New Customer Promotion did so in 2019 or 2020.

10. **Plaintiffs Received the Benefit of Their Bargain**: The unjust enrichment claim (Count 11) fails because, as made clear by Plaintiffs' own pleadings, DraftKings and Golden Nugget did not fail to provide the service for which Plaintiffs paid. Plaintiffs "received exactly what [they] thought [they were] purchasing – a gambling experience where winning was not guaranteed." *Antar*, 2025 WL 1219316, at *3. The claim is also subject to dismissal because it is based on the same improper conduct that forms the basis of the consumer protection and fraud claims, and fails along with them.

11. **No Standing to Seek Injunctive Relief**: Plaintiffs lack standing to seek injunctive relief because they are aware of the alleged misrepresentations and therefore face no threat of imminent future injury from the Promotions. They also purport to bring Count 3 under the consumer protection statutes of other states, but lack standing to do so because the alleged injuries occurred in Pennsylvania.[1]

12. **Other Pleading Deficiencies**: Plaintiff Setton fails to adequately plead the elements of conversion (Count 13) because he does not allege facts demonstrating that he is lawfully entitled to the account funds at issue.

## V.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." A complaint must be dismissed if it

---

[1] Plaintiffs are represented by a law firm (Loevy & Loevy) that has filed three other nearly identical purported nationwide class actions against DraftKings in Illinois, New York and New Jersey: *Beyer et al. v. DraftKings Inc.*, No. 1:25-cv-01336 (N.D. Ill. Feb. 6, 2025); *DeLeon et al. v. DraftKings Inc.*, No. 1:25-cv-00644-DLC (S.D.N.Y. Jan. 22, 2025); and *Youngs et al. v. DraftKings, Inc. et al*, No. 2:25-cv-00179-SRC-JRA(D.N.J. April 17, 2025) (the "Loevy Class Actions").

does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555. Further, a complaint must contain more than unsupported legal conclusions. *Id*. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. (internal quotation marks and citations omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must plead more than the mere possibility of relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). If the complaint permits only an inference of the mere possibility of misconduct, it must be dismissed. *Id*. at 210–11. The Court "need not credit a complaint's bald assertions or legal conclusions." *Morse v. Lower Merion Sch. Dist*., 132 F.3d 902, 906 (3d Cir. 1997) (citation omitted).

Further, Rule 9(b) imposes a heightened pleading standard for claims sounding in fraud. Fed. R. Civ. P. 9(b) ("In all averments of "fraud or mistake, . . . the circumstances constituting fraud or mistake  . . . shall be stated with particularity.") "To satisfy this standard, the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

A motion to dismiss for lack of standing is properly brought under Rule 12(b)(1). *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020). "Standing must be assessed based on each claim alleged and for each form of relief sought." *Zimmerman v. Highmark, Inc*., No. 2:23-CV-250-NR, 2025 WL 1220364, at *5 (W.D. Pa. Apr. 28, 2025). A plaintiff seeking injunctive relief bears the burden of establishing that they are "likely to suffer future injury from the defendant's conduct." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig*., 903 F.3d 278, 292 (3d Cir. 2018) (internal quotation marks and citations

omitted).

## VI. <u>ARGUMENT</u>

### A. The Negligence and IIED Claims Fail (Counts 1, 2, 5, 12).

The Complaint asserts three negligence-based claims: (1) "Negligence" brought by Macek, Setton, Alicea, and Harner, alleging that DraftKings owes a duty to "foreseeable victims of gambling addictions" that it purportedly breached by sending them promotions (Count 1), (Compl. ¶¶ 355 & 369); (2) "Negligence" brought by Setton, Macek, and Harner, alleging that DraftKings owes a duty "to prevent a user from gambling when they have temporarily or permanently suspended their accounts or when they are on a gambling self-exclusion list" that it purportedly breached (Count 2), (*Id.* ¶¶ 377 & 380); and (3) "Failure to Warn" brought by Setton, Harner, Alicea, and Macek, alleging that Defendants owe a duty "to ensure that users of the DraftKings platform were made aware of the material terms of and the risks . . . associated with the [Casino Promotion]" (Count 5), (*Id.* ¶ 418).

Plaintiffs also attempt to assert a claim for IIED (Count 12), alleging that Defendants "solicit[ed] Plaintiffs . . . to resume gambling despite knowing they had opted into programs designed to prevent them from gambling." *Id.* ¶ 509.

Each of these claims suffers from numerous pleading and legal defects. They should each be dismissed.

### 1. The Gaming Act Bars Counts 2 (Negligence) and Count 12 (IIED).

Pennsylvania law expressly bars the negligence claim in Count 2 and the IIED claim in Count 12. In those claims, Plaintiffs allege that Defendants should be held liable for purportedly allowing customers who opted into self-exclusion programs to bet on DraftKings' platform. Plaintiffs allege that Defendants breached a purported duty "to prevent a user from gambling when they have temporarily or permanently suspended their accounts or when they are on a gambling self-exclusion list." *Id.* ¶ 377. Similarly, in support of the IIED claim, Plaintiffs allege that Defendants "solicit[ed] Plaintiffs . . . to resume gambling despite knowing they had opted into programs designed to prevent them from gambling." *Id.* ¶ 509.

To be clear, DraftKings denies these allegations. But even assuming their truth (as required at this stage), gaming operators are expressly immunized from liability based on such allegations under Pennsylvania law. The Gaming Act provides:

> A licensed gaming entity or employee thereof *shall not be liable* to any self-excluded person or to any other party in any judicial proceeding *for any harm*, *monetary or otherwise*, which may arise as a result of:
>
> > (1) the failure of a licensed gaming entity to withhold gaming privileges from or restore gaming privileges to a self-excluded person;
> >
> > (1.1) the failure of an interactive gaming certificate holder or interactive gaming operator to withhold interactive gaming privileges from or restore interactive gaming privileges to a self-excluded person; or
> >
> > (2) otherwise *permitting or not permitting a self-excluded person to engage in gaming activity* in the facility or participate in interactive gaming *while on the list of self-excluded persons*.

4 Pa. S.C. § 1516 (emphasis added).

This provision of the Gaming Act squarely bars claims against licensed gaming entities like Defendants alleging liability for any harm that results from gaming by self-excluded individuals. Thus, even if Plaintiffs had self-excluded, Counts 2 and 12 plainly fail to state a claim and should be dismissed.

### 2. Plaintiffs' Negligence Claims Fail (Counts 1, 2, and 5).

"To state a claim for negligence under Pennsylvania law, a plaintiff must show: 1. the defendant owed the plaintiff a duty or obligation recognized by law; 2. a breach of that duty; 3. a causal connection between the conduct and the resulting injury; and 4. actual damages." *Moore v. Solanco Sch. Dist.*, 471 F. Supp. 3d 640, 661 (E.D. Pa. 2020).

### (a) Plaintiffs Fail to Allege a Legal Duty That Defendants Owed to Them.

The negligence claims do not satisfy the first element for the simple reason that Plaintiffs have not alleged any cognizable legal duty that Defendants owed to them, and courts have consistently held that no such duty exists. In analyzing negligence claims, the "threshold question" is whether the defendant owed the plaintiff a duty of care. *Humphries v. Pa. State*

*Univ.*, 492 F. Supp. 3d 393, 406 (M.D. Pa. 2020). That threshold question is a question of law that can be decided at the motion to dismiss stage. *Id.*

In Counts 1, 2, and 5, Plaintiffs allege that DraftKings and/or Golden Nugget owe a legal duty to "foreseeable victims of gambling addictions," which includes purported duties to: "discover" when customers "are gambling beyond their means" and "help" them, not induce them to play on DraftKings' platforms, and meet unspecified "[i]ndustry standards" (Compl. ¶¶ 355-59, Count 1); prevent users with gambling addictions from using the platform, including users who are on a gambling self-exclusion list (Count 2) (*id.* ¶¶ 376-77); and ensure that users understand terms and risks of the Casino Promotion before opting in (Count 5 (*id.* ¶ 418).

Even setting aside Plaintiffs' vague and conclusory allegations, none of these legal duties exists. No court applying Pennsylvania law has ever recognized any of the legal duties that Plaintiffs allege or imposed such duties on a gaming operator. The Third Circuit recently affirmed the dismissal of a similar negligence claim because, as a matter of law, there is no "duty of care on casinos over problem gamblers." *Antar*, 2025 WL 1219316 at * 4; *see also Hakimoglu v. Trump Taj Mahal Associates*, 70 F.3d 291, 294 (3rd Cir. 1995) (finding that casino owed no duty of care to patrons who incur gambling losses after being overserved with alcohol). While *Antar* was decided under New Jersey law, that same result is dictated by Pennsylvania law. The Third Circuit based its decision in part on the fact that New Jersey had enacted an "elaborate regulatory scheme" over the state's casino and gaming industry that provided only limited civil remedies. The same is true in Pennsylvania, where the legislature has established an extensive regulatory framework that governs Defendants' activities in the Commonwealth and provides limited civil remedies that do not encompass the harm Plaintiffs allegedly suffered.[2] For example, as detailed in Section A.1, both Pennsylvania and New Jersey law specifically immunize casinos for "*any* harm" that may arise from failing to withhold gaming privileges or

---

[2] *See* Rules and Regulations. Title 58. Recreation. Part VII Gaming Control Board, 58 Pa. Code § 401a.1, *et seq*.

restoring gaming privileges to self-excluded persons. 4 Pa. S.C. § 1516; NJ ST 5:12-71.2(c). And, as in *Antar*, a Pennsylvania district court favorably cited a New Jersey district court case for the proposition that, while a casino may owe a duty of care to maintain safe premises, it did not owe "compulsive gamblers a duty to protect them from their own gambling behavior." *Okane v. Tropicana Ent., Inc.*, No. 12-6707, 2013 WL 56088, at *3 (E.D. Pa. Jan. 3, 2013) (citing *Taveras v. Resorts Int'l Hotel, Inc.*, No. 07-4555 (RMB), 2008 WL 4372791, at *4, n.3) (D.N.J. Sept. 19, 2008)).

This Court should decline to expand Pennsylvania tort law by imposing new legal duties on gaming operators. *Vargus v. Pitman Mfg. Co.*, 675 F.2d 73, 76 (3rd Cir. 1982) ("We have been asked to deliver prematurely a new doctrine of Pennsylvania tort law, and as a federal court we are unwilling to do so."). Where "'there [is] no reported decision by the Pennsylvania Supreme Court or any other Pennsylvania court addressing the precise issue before [the Court], it [is] the duty of the District Court to predict how the Pennsylvania Supreme Court would [rule] if presented with this case.'" *Polt v. Sandoz, Inc.*, 462 F. Supp. 3d 566 (E.D. Pa. May 26, 2020) (citation omitted). In making this prediction, "[f]ederalism concerns require that [federal courts] permit state courts to decide whether and to what extent they will expand state common law." *Id*. at 566-67 (citation omitted). Furthermore, Pennsylvania courts have generally "expressed reluctance to judicially expand tort liability on public policy grounds as such is properly the role of the legislature." *Id*. In fact, the Third Circuit has already held that "courts have been reluctant to imply a private right of action for money damages in favor of casino patrons[.]" *Antar*, 2025 WL 1219316, at *4.

As the Third Circuit recognized, "courts across the country that have considered the issue have uniformly rejected imposing such a duty on casinos." *Id.* at *3. Courts have refused to hold gaming operators liable for customers' "own decision[s]" to participate in gaming. *See Ristic v. Mach. Zone, Inc.*, No. 15-CV-8996, 2016 WL 4987943, at *4 (N.D. Ill. Sept. 19, 2016) (declining to impose liability to "protect [a customer] from his own decision to play the Casino"); *Mason v. Mach. Zone, Inc.*, 140 F. Supp. 3d 457, 469 (D. Md. 2015) ("The Court does

not sit in judgment of the entertainment choices that Plaintiff and others like her have made—but it will not allow Plaintiff to foist the consequences of those choices onto an entertainment purveyor that, at least on the face of this Complaint, appears to have done nothing wrong."); *see also Merrill v. Trump Indiana, Inc.*, 320 F.3d 729, 732–33 (7th Cir. 2003) (holding that Indiana law imposes no duty on casino to eject problem gamer); *Allen v. Caesars Ent. Corp.*, No. 4:23-CV-00989-MTS, 2023 WL 7181654, at *2 (E.D. Mo. Nov. 1, 2023) (holding that Missouri law imposes no common-law duty on casinos to protect problem gamblers); *Sherman v. Harrah's New Orleans Casino*, No. 06-2379, 2008 WL 11509255, at *7 (E.D. La. Feb. 12, 2008) (refusing to impose duty on casinos to identify and exclude problem gamblers); *Logan v. Ameristar Casino Council Bluffs, Inc.*, 185 F. Supp. 2d 1021, 1025 (S.D. Iowa 2002) (holding that casino did not owe common-law duty to prevent problem gamer from gaming); *Stevens v. MTR Gaming Grp., Inc.*, 788 S.E.2d 59, 66 (W. Va. 2016) (finding that video lottery terminal manufacturers and casinos where terminals are located had no duty to protect users from compulsively gaming); *NOLA 180 v. Harrah's Operating Co.*, 94 So. 3d 886, 888-89 (La. Ct. App. 2012) (holding that casino had no duty to identify and recognize problem gamblers).

This Court should not recognize or create the new legal duties that Plaintiffs attempt to allege[3], and it should dismiss all negligence claims (Counts 1, 2, and 5).

---

[3] To the extent that this Court considers whether to expand tort liability and impose a duty that no other court has imposed before, Pennsylvania law provides a five-part test to determine the existence of a duty f care that analyzes: "(1) the relationships between the parties; (2) the social utility of the [defendant's] conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the [defendant]; and (5) the overall public interest in the proposed solution." *Sullivan v. Truist Bank*, 715 F. Supp. 3d 668, 674 (E.D. Pa. 2024). (citations omitted). Even under that five-factor test, no duty of care exists here. *Antar*, 2025 WL 1219316, at *3 (finding casinos owe no duty of care to compulsive gamblers under New Jersey's identical five factor test). Plaintiffs are simply DraftKings and Golden Nugget customers; they do not allege "any special position of respect or trust with each other, so as to impose a special duty of care." *Sullivan*, 715 F. Supp. 3d at 675. (citation omitted). In weighing the social utility of Defendants' actions against the nature of the risk and foreseeability of harm, Pennsylvania specifically "passed a bill to legalize internet gambling," and as the Third Circuit has made clear, losses are "a natural result" of participating in this activity (and therefore foreseeable independent of Defendants' conduct), and "present almost metaphysical problems of

### (b) The Complaint Does Not Adequately Allege Cognizable Injury Caused by Purported Negligence.

Plaintiffs' negligence claims also fail to satisfy the third and fourth required elements: "a causal connection between the conduct and the resulting injury" and "actual damages." *Moore*, 471 F. Supp. 3d at 661. Under Pennsylvania law, a negligence claim will be dismissed if the plaintiff "fails to plead sufficient facts alleging physical injury or property damage[.]" *Lloyd v. Covanta Plymouth Renewable Energy, LLC*, 517 F. Supp. 3d 328, 332 (E.D. Pa. 2021); *Aetna Inc. v. Insys Therapeutics, Inc.*, 324 F. Supp. 3d 541, 555 & n.49 (E.D. Pa. 2018) ("Under Pennsylvania law, the [economic loss] doctrine provides that 'no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage.'") (quoting *Excavation Techs., Inc. v. Columbia Gas Co. of Pennsylvania*, 985 A.2d 840, 841 n.3 (Pa. 2009)).

The Complaint does not allege that Plaintiffs were physically injured or that their property was damaged. *See generally* Compl. In support of Count 1, Plaintiffs claim only "financial and emotional" injuries, which are not recoverable on a negligence claim. *Id.* ¶ 370; *Aetna Inc.*, 324 F. Supp. 3d at 555.[4] For Counts 2 and 5, while Plaintiffs make inadequate conclusory allegations that they have been "damage[d]," they fail to identify a physical injury or property damage, and it is implausible that they suffered such injury based on Defendants' alleged conduct. Compl. ¶¶ 381, 421. Counts 1, 2, and 5 should all be dismissed for failure to state a claim because they do not allege physical harm or harm to property.

### (c) Counts 1 and 2 Fail Because Plaintiffs Plead Intentional Conduct.

Counts 1 and 2 fail for the additional reason that, according to Plaintiffs' allegations,

---

proximate causation." Compl. ¶ 1; *Antar*, 2025 WL 1219316, at *2. (citation omitted). As to the latter two factors, the extensive regulation of the gaming industry is "by design" to balance not only the "protection of gambling patrons" but also the "protection of the financial viability of the casino industry." *Id.* at *4 (internal quotation marks and citation omitted).

[4] Plaintiffs have not asserted a claim for negligent infliction of emotional distress.

DraftKings' purportedly negligent conduct was "intentional." Compl. ¶ 371 ("DraftKings' actions were intentional and done with a wanton and willful disregard"), 382 (same). "Pennsylvania law does not allow for recovery in negligence for what should be alleged as an intentional tort." *Andrews v. Fullington Trail Ways, LLC*, No. 3:15-228, 2016 WL 3748579, at *8 (W.D. Pa. July 8, 2016); *Moore* , 471 F. Supp. 3d at 671 (ruling that "a negligence claim [wa]s not stated" where "alleged conduct was clearly intentional"); *DiSalvio v. Lower Merion High Sch. Dist.*, 158 F. Supp. 2d 553, 561 (E.D. Pa. 2001) (dismissing plaintiff's negligence claim because plaintiff alleged that defendant "acted with intent"). While DraftKings vehemently denies any intentional misconduct, Plaintiffs' negligence claims cannot survive given the clear allegations in their Complaint.

### (d)     The Claim Titled "Failure To Warn" Fails for Independent Reasons (Count 5).

Plaintiffs purport to assert a claim titled "failure to warn." But there is no such claim under Pennsylvania law other than in specialized contexts, namely strict products liability, or where the defendant has expressly "undertaken the responsibility of making th[e] warning." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 263 - 644 (3d Cir. 2010). Neither provides a basis for Count 5.

Plaintiffs have not alleged any facts that would show Defendants expressly undertook a duty to ensure that users opted into the Casino Promotion only if they "understood its terms and risks." Compl. ¶ 420. The claim therefore cannot proceed on that basis. *See Sheridan*, 609 F.3d at 263–64 (affirming dismissal for failure to state a claim where complaint failed to allege that the defendant had "undertaken the responsibility of making th[e] warning" that allegedly was not made).

To the extent Plaintiffs intended to assert a products-liability claim, that theory fails as well. Plaintiffs challenge a promotion for a service, not a product. Compl. ¶¶ 417-18 (alleging that Defendants owed a duty in connection "with the Casino Deposit Match Promotion"). Nor could Plaintiffs possibly allege a products-liability claim against DraftKings or Golden Nugget

for offering DK Casino, Golden Nugget Casino, or DK Sportsbook, which are services (the ability to make bets on an online platform). One cannot hold them, store them, eat them, or sell them. This reality defeats Plaintiffs' claims, for in Pennsylvania, "products" subject to "products liability" law must be tangible. That blackletter rule follows from the Restatement (Second) of Torts § 388, which Pennsylvania has adopted, and its requirement that plaintiffs pursuing products liability claims have suffered physical harm resulting from the use of "chattels." *Parkinson v. Guidant Corp.*, 315 F. Supp. 2d 741, 748 (W.D. Pa. 2004); Restatement (Second) of Torts § 388 (1965); s*ee also Romeo v. Pittsburgh Assocs.*, 787 A.2d 1027, 1032 (Pa. 2001) (holding that products liability did not apply because the "sale of a ticket to a baseball game is the sale of a service, not a product"). Where a plaintiff does not challenge a "product," a claim challenging the "adequacy of warnings" fails to state a claim.[5] *Smith v. Linn*, 563 A.2d 123, 127 (Pa. Super. Ct. 1989) (holding that plaintiff had no products liability claim because expressive content in a diet book was not a product).

### 3. The IIED Claim Fails (Count 12).

Plaintiff's IIED claim is based on conduct for which Defendants are statutorily immune.

---

[5] This bright-line rule is not unique to Pennsylvania. Courts routinely reject products liability claims against internet-based platforms and software service providers. *See, e.g.*, *D'Ambrosio v. Rajala*, No. 24-cv-00678, 2025 WL 1383286, at *12 (N.D. Ill. May 13, 2025) (dismissing products liability claim based on alleged defects with Meta's app and algorithm because they are "service platforms," not products); *Brandt v. Bos. Sci. Corp.*, 792 N.E.2d 296, 302 (Ill. 2003) (holding that courts "must find that the defendant sold a product rather than services before imposing liability."); *Jackson v. Airbnb, Inc*., 639 F. Supp. 3d 994, 1010-11 (C.D. Cal. 2022) (finding Airbnb's platform is "more akin to a service than to a product"); *Eberhart v. Amazon.com, Inc*., 325 F. Supp. 3d 393, 399 (S.D.N.Y. 2018) (ruling Amazon is a provider of services through its marketplace and not a distributor of products); *Jacobs v. Meta Platforms, Inc*., No. 22CV005233, 2023 WL 2655586, at *4 (Cal. Super. Ct. Mar. 10, 2023) (dismissing product liability claim where "Plaintiffs' negligent design claim is based on the design of the social media platform itself, which provides a service"); *Jane Doe No. 1 v. Uber Techs., Inc.*, 79 Cal.App.5th 410, 419 (2022) ("Uber app was not a product, and thus a products liability theory of recovery was not legally viable."); *Ziencik v. Snap, Inc.*, No. CV 21-7292-DMG (PDx), 2023 WL 2638314, at *4 (C.D. Cal. Feb. 3, 2023) ("Snapchat is more like a service than a product, and services are not subject to the laws of strict products liability."); *Rodgers v. Christie*, 795 F. App'x 878, 880 (3d Cir. 2020) (finding under New Jersey law, algorithm embodied in software was "neither 'tangible property' nor remotely 'analogous' to it.").

But even if it were not, Plaintiffs fail to state a claim because the conduct alleged is not extreme or outrageous, and Plaintiffs have not alleged physical harm.

Under Pennsylvania law, IIED has the following elements: "(1) the conduct must be extreme or outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Burke v. Barr*, No. 5:22-CV-3464, 2025 WL 868617, at *4 (E.D. Pa. Mar. 19, 2025). (citations omitted). Moreover, "Pennsylvania law requires that some type of physical harm be shown in order to satisfy the severe emotional distress element." *Id.*; *Suniaga v. Downingtown Area Sch. Dist.*, 765 F. Supp. 3d 413, 431 (E.D. Pa. 2025 (holding that a plaintiff must demonstrate "some physical manifestation of injury."). (citation omitted). Even taking their Complaint as true, Plaintiffs have failed to meet their burden of adequately pleading these elements.

### (a)  Plaintiffs Fail to Allege Extreme and Outrageous Conduct.

As discussed in Section A.1, DraftKings and Golden Nugget are statutorily immune for the conduct alleged in Count 12: "soliciting Plaintiffs . . . to resume gambling despite knowing they had opted into programs designed to prevent them from gambling." Compl. ¶ 509. But even if they were not, Count 12 should be dismissed because the conduct alleged does not meet the "extraordinarily high" bar of outrageousness necessary to support a claim for intentional infliction of emotional distress. *Suniaga,* 765 F. Supp. 3d at 431.

Pennsylvania courts have been reluctant to declare conduct "outrageous," requiring that "the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Burke*, 2025 WL 868617, at *4 (citations omitted). In assessing a claim for IIED at the pleading stage, a court is to decide as an initial matter whether the conduct at issue can reasonably be regarded as sufficiently extreme to constitute "outrageousness" as matter of law. *Simpson v. Phila. Sheriff's Off.*, 351 F. Supp. 3d 919, 926-27 (E.D. Pa. 2019). "Only in very extraordinary cases have plaintiffs been held to state a cause of action under this tort." *Kimmel v. Peterson*, 565 F. Supp. 476, 498 (E.D. Pa. 1983).

Pennsylvania law specifically immunizes casinos for "*any* harm" that may arise from failing to withhold gaming privileges or restoring gaming privileges to self-excluded persons. 4 Pa. S.C. § 1516; NJ ST 5:12-71.2(c) (emphasis added). It follows that this conduct cannot possibly be considered "outrageous." Additionally, Pennsylvania courts hold that conduct that causes the "mere loss of money" is not outrageous, even if it is intentional. *Kimmel*, 565 F. Supp. at 498. ("Plaintiffs strenuously argue that this is . . . a course of fraudulent conduct perpetrated by a trusted advisor. However, that does not mean that the case rises to the level of outrageous conduct. It involves the mere loss of money, not the more personal loss of a life or health[.]"). In Count 12, Plaintiffs do not allege any loss of life or health, or any other conduct that could plausibly be considered "outrageous" as contemplated by Pennsylvania law. The claim should be dismissed.

**(b)     Plaintiffs Fail to Allege Physical Harm.**

Moreover, "[i]n order to state a claim for intentional infliction of emotional distress, plaintiff must suffer some type of resulting physical harm because of the defendants' outrageous conduct." *Kane v. Chester Cnty. Dep't of Child., Youth & Families*, 10 F. Supp. 3d 671, 693 (E.D. Pa. 2014). In order to properly plead an IIED claim in Pennsylvania, a plaintiff "must support the claim of physical harm resulting from emotional distress with competent expert medical evidence." *Id.* (dismissing IIED claim at the pleading stage where "Plaintiff's Second Amended Complaint does not contain any medical evidence supporting an allegation that minor I.J.P. suffered a physical manifestation of his emotional distress."). Here, the Complaint contains no medical evidence, and does not even allege that Plaintiffs were physically injured. *See generally* Compl. In support of Count 12, Plaintiffs claim only that they "suffer[ed] severe emotional distress" without alleging facts to support that conclusion. The claim should be dismissed for failure to plausibly allege physical harm.

**B.     The UTPCPL and Common Law Fraud Claims Fail (Counts 3, 4, 6, 7, 8, 9, and 10).**

Plaintiffs challenge each of the Promotions under the UTPCPL, 73 P.S. § 201-1, *et seq.*,

and common law claims for intentional misrepresentation and fraudulent inducement. These claims suffer from rampant pleading deficiencies and must be dismissed.

### 1. The UTPCPL Claims Fail (Counts 3, 6, and 7).

In Counts 3, 6, and 7, Plaintiffs allege that DraftKings' and/or Golden Nugget's advertisements for the Casino Promotion[6], No Sweat Promotion, and Deposit Match Promotion, respectively, were misleading and deceptive in violation of the UTPCPL. Plaintiffs primarily rely on the statute's "catch-all" provision, which prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."[7] 73 P.S. § 201-2(4)(xxi); Compl. ¶¶ 388, 429, 447. To state a claim under the catch-all provision, a Plaintiff must allege, at a minimum: (1) a deceptive act, meaning "conduct that is likely to deceive a consumer acting reasonably under similar circumstances"; (2) justifiable reliance based on the defendants' misrepresentation or deceptive conduct; and (3) an ascertainable loss caused by this justifiable reliance. *Vassalotti v. Wells Fargo Bank, N.A.*, 732 F. Supp. 2d 503, 511 (E.D. Pa. 2010).

For Counts 6 and 7, Plaintiffs also rely on the UTPCPL's false advertising provisions, which prohibit "[r]epresenting that goods or services have . . . characteristics, . . . benefits or quantities that they do not have" (73 P.S. § 201-2(4)(v); Compl. ¶¶ 427, 445), and "[a]dvertising goods or services with intent not to sell them as advertised" (73 P.S. § 201-2(4)(ix); Compl. ¶ 446). To set forth a claim for false advertising under these provisions, a plaintiff must allege: (1)

---

[6] Plaintiffs also purport to bring this claim under the consumer protection statutes in other states. Compl. ¶ 387. However, Plaintiffs are residents of Pennsylvania and do not allege that they saw advertisements for the Casino Promotion in other states and therefore lack standing to sue under those states' statutes.

[7] As a preliminary matter, the catch-all provision should not even apply because the statute has dedicated provisions for false advertising. *See Commonw. by Shapiro v. Golden Gate Nat'l Senior Care LLC*, 648 194 A.3d 1010, 1028 (Pa. 2018) ("Unlike subsections (ix) and (x), neither subsections (v) nor (xxi) employ the term "advertising," but describe prohibited conduct in other, more general, terms. We cannot ignore this distinction or interpret the statute in such a way as to eliminate this distinction.").

"a defendant's representation is false"; (2) "it actually deceives or has a tendency to deceive"; and (3) "the representation is likely to make a difference in the purchasing decision." *Seldon v. Home Loan Servs., Inc*., 647 F. Supp. 2d 451, 466 (E.D. Pa. 2009). Plaintiffs have failed to do so, and Counts 3, 6, and 7 fail to state a claim.

> **(a)     Plaintiffs Fail to Plead a Material Misrepresentation or Deceptive Act.**

All of Plaintiffs' UTPCPL claims require a material misrepresentation or deceptive act, and they all fail for the same reason: the terms of each Promotion contain the very information that Plaintiffs allege was misrepresented, suppressed, or concealed.

An act or a practice is deceptive if "it actually deceives or has a tendency to deceive." *Id.* None of the Promotions were false or had the capacity to deceive because in each instance, the terms of the Promotions were explicitly, accurately, clearly, and repeatedly disclosed. Plaintiffs therefore have not met their pleading obligations under any of the UTPCPL provisions. *See McLean v. Big Lots Inc.*, 542 F. Supp. 3d 343, 351–52 (W.D. Pa. 2021) (dismissing UTPCPL claim alleging that defendants' advertising misrepresented that face masks were subject to sales tax because defendants' conduct "cannot be considered deceptive" where defendants' receipts "disclosed the actual pre-tax price of non-medical protective face masks and the actual amount of sales tax collected in connection with each transaction"); *Fed. Trade Comm'n v. Am. Future Sys., Inc.*, No. CV 20-2266, 2024 WL 1376026, at \*20 (E.D. Pa. Mar. 29, 2024) (finding where telemarketing script "disclosed the material terms and conditions of the offer, including the structure of the subscription, the cost of the subscription and the cancellation policy," the script on its face does not create a "'net impression' [that] would mislead reasonable consumers into thinking the publication was 'free at no risk.'").

The Casino Promotion (Count 3):

Plaintiffs allege that the advertisements for this promotion are misleading and deceptive because they: (i) omitted "any warning regarding the large play-through requirements for the bonus promotion or any mention of the risk that a consumer's initial deposit would be forfeited if

they began but did not complete the promotion;"[8] and (ii) represented that "consumers were likely to receive a cash-value match of their deposit of as much as $2,000[.]" Compl. ¶¶ 394-95.

Tellingly, Plaintiffs fail to allege that the Casino Promotion's terms, or the actual statements made in the advertisements for the Casino Promotion, are false or misleading. This is because, by Plaintiffs' own admission, the terms for the Casino Promotion fully disclose everything they claim to be misleading or missing. They admit that the provision that "casino games contributed to the playthrough requirement[s] at varying rates and that the games with the most favorable potential odds for users contribute[d] only marginally to the playthrough" was in the terms for the promotion. *Id.* ¶ 171. They further admit that the Casino Promotion's terms contained the following disclosure:

> Failure to complete the play-through requirement, defined below, of the Original Deposit and Casino Bonus Funds within seven (7) days (the "Play-through Period") of the Casino Bonus Funds being credited to your account will void the award. This will result in forfeiture of any wagered and lost portion of the Original Deposit, Casino Bonus Funds and any accumulated winnings.

*Id.* ¶ 174. The "example advertisement" for Golden Nugget's Casino Promotion also includes all of the terms that Plaintiffs allege were concealed. It provides:

> 100% deposit match up to $1,000 issued in bonus funds. Original deposit and bonus funds subject to 10x play-thru at different contribution rates within 30 days (720 hours). To receive the max bonus, customer must play through a min. cumulative total of $20,000 at 100% contribution rates . . . Credits must be wagered 1x and stake not included in winnings . . . Play-thrus must be met prior to withdrawal of bonus winnings.

*Id.* ¶ 159, (Fig. 2). The example advertisement also provides a link to the full terms of the

---

[8] Plaintiffs' failure to warn theory under the UTPCPL fails for the additional reason that, under the catch-all provision they rely upon, a "nondisclosure theory of deceptive conduct is only actionable if a vendor had an affirmative duty to disclose the defect in the good or service." *Halpern v. Ricoh U.S.A., Inc.*, 2023 PA Super 139, 299 A.3d 1023, 1029 (2023), *appeal granted,* 314 A.3d 513 (Pa. 2024). As explained in Section A.2(d), Defendants did not have a legal duty to ensure that users opted into the Casino Promotion only if they understood its terms and risks.

Promotion. *Id.*

Simply put, Plaintiffs cannot dispute the fact that the promotional terms disclose each aspect of the Casino Promotion of which they now complain. A UTCPL claim is "subject to dismissal" where "the conduct of defendants could not be considered fraudulent, unfair, or deceptive because they disclosed all relevant information relating to the" transaction. *Ranalli v. Etsy.com, LLC*, 570 F. Supp. 3d 301, 306 (W.D. Pa. 2021) (citing *McLean*, 542 F. Supp. 3d at 351–53); *McLean*, 542 F. Supp. 3d at 351–52 (advertised item price "cannot be considered deceptive" where defendants' receipts "disclosed the actual pre-tax price" and "the actual amount of sales tax collected").

Plaintiffs complain that DraftKings' advertisements for the Casino Promotion were misleading because DraftKings' disclosures were "hard-to-understand" and "hidden deep in the promotions' terms (and not included in even the small print accompanying many advertisements for the promotions)." Compl. ¶¶ 171-72. However, none of the Plaintiffs allege that they even saw any specific Casino Promotion advertisement, nor do they specify what terms were included in the advertisements they purportedly did see. Accordingly, they have failed to allege that DraftKings made any false representation to *them*. *Weinberg v. Sun Co.*, 565 Pa. 612, 617 (2001) (emphasis added) ("There is no authority which would permit a private plaintiff to pursue an advertiser because an advertisement might deceive members of the audience and might influence a purchasing decision when the plaintiff himself was neither deceived nor influenced.").

The No Sweat Promotion (Count 6) and New Customer Promotion (Count 7):

Plaintiffs' UTPCPL claims challenging the advertisements for the No Sweat and New Customer Promotions also fail because Plaintiffs allege that none of the terms were concealed or misrepresented. Compl. ¶¶ 426, 443. The terms of each of the Promotions contain the very information that Plaintiffs allege was misrepresented, suppressed, or concealed.

Plaintiffs include a purported April 2025 advertisement from DraftKings' website offering "your next bet risk free up to $50," even though they admit that DraftKings stopped using that term in 2022. *Id*. ¶¶ 213 (Fig. 5), 225. Immediately below, in bold type, the

advertisement says "**View Full Terms**." *Id.* Plaintiffs also include a purported March 2024 advertisement for the No Sweat Promotion that discloses the very terms Plaintiffs complain were not disclosed. *Id*. ¶ 213, (Fig. 6). The advertisement states—immediately above "Bet Now"— that "if your first bet doesn't hit," get a "bonus bet back in the amount of your original wager." *Id*. There is no statement that a new customer would receive "cash refunds," as Plaintiffs allege. *Id*. ¶ 434. The advertisement further states: "Bonus bets expire 7 days (168 hours) after being awarded. Bonus bets must be wagered 1x before any resulting cash winnings can be withdrawn and stake is not included in winnings." *Id*. ¶ 213 (Fig. 6). In other words, the precise issues Plaintiffs complain about—the circumstances in which a customer would be eligible to receive a bonus bet, how long a customer could use that bonus bet, and the fact that the stake would not be included in winnings from wagering with that bonus bet—were all disclosed on the face of the advertisement itself and included in Plaintiffs' Complaint.[9] *Id.*

Plaintiffs allege that they did not see the full terms and conditions before opting into the No Sweat Promotion. *Id*. ¶ 217. That is irrelevant. Plaintiffs do not allege that the full terms were unavailable to them – and they concede that the opposite is true. *See id*. ¶ 213 (Fig. 6); *Ranalli*, 570 F. Supp. 3d at 307 (finding no allegations of deceptive conduct where "Plaintiff has alleged he did not realize he was charged a sales tax . . . but not that he was not shown tax information prior to making his purchase").

Plaintiffs also allege that the No Sweat Promotion was "designed to inculcate gambling addictions in DraftKings's users." (Count 6) (Compl. ¶ 435). They do not provide any supporting allegations concerning how the alleged design of the No Sweat Promotion had the capacity to

---

[9] Plaintiffs also include a screenshot of what they allege are the "full terms" of a No Sweat Promotion from November 2024. *Id*. ¶ 218 (Fig. 9). These terms disclose *everything* Plaintiffs claim was misrepresented or hidden. They disclose (i) a customer "get[s] a bonus bet back if you lose;" (ii) bonus bets are not a refund of the cash wagered by the customer but are instead "single-use, non-transferable, non-withdrawable and have **no cash value**"; and (iii) if a customer places a wager using a bonus bet and wins, the user will not receive their stake back: "Payouts from Bonus Bet wagers will be transferred to the customer's cash balance and do not include the Bonus Bet stake. Ex: if a $10 bonus bet is placed at +100 odds and wins, only the profit of $10 will be credited to the customer's account." *Id*. (emphasis added).

mislead customers, as required under the UTPCPL. As explained above, the terms of the No Sweat Promotion were fully disclosed to customers. The fact that the No Sweat Promotion may have encouraged participating customers to place wagers does not make the promotion itself misleading, as the Third Circuit has held. *Antar*, 2025 WL 1219316, at *2 (finding that offers of bonuses, credits, and deposit matches were "exactly as the hosts represented" and therefore were not misleading under the New Jersey Consumer Fraud Act).

With regard to the New Customer Promotion, Plaintiffs again do not allege that any of the terms were misrepresented or hidden. Indeed, Plaintiffs plead the very terms of that Promotion about which they claim to have been confused: "[i]n order for a customer to obtain the '$1,000 Bonus,' he or she would have to satisfy three [] requirements," which included: (i) depositing $5,000 up front; (ii) betting $25,000 within 90 days on wagers with odds of "-300 or longer;" and (iii) placing wagers using "DK Dollars" and winning in order "to accrue a cash value of $1,000 in their account." Compl. ¶ 250. Crucially, Plaintiffs allege that those requirements were "explained." *Id.* The UTPCPL claims should be dismissed because Plaintiffs did not misrepresent, suppress, or conceal the terms of the Promotions.

### (b) Plaintiffs Do Not Plead What Advertisements or Promotional Offers They Saw.

Plaintiffs do not allege facts identifying any purported misrepresentations, as required to support their claims. Plaintiffs describe various advertisements and promotional materials but do not allege which ones they saw (if any) or how they relied on them. Courts routinely dismiss UTPCPL claims under these circumstances, and the Court should do so here. *First Liberty Ins. Corp. v. Haier US Appliance Sols., Inc.*, No. CV 23-2268-KSM, 2023 WL 5832163, at *6 (E.D. Pa. Sept. 8, 2023) (dismissing UTPCPL claim for deceptive advertising where plaintiff "has not identified what those advertisements 'convey,'" "when they were made," or "that the Wootens relied on" them); *Bessemer Sys. Fed. Credit Union v. Fiserv Sols., LLC*, 472 F. Supp. 3d 142, 180 (W.D. Pa. 2020) ("Bessemer fails to assert when the advertisements at issue were utilized by Fiserv and/or who viewed and relied on these advertisements and/or when they were viewed. . . .

Such allegations are not pled with sufficient specificity to plead a claim for a UTPCPL violation that is plausible on its face.").

The Casino Promotion (Count 3):

Plaintiffs allege that, over a period of five years[10], they saw "multiple ads" for the DraftKings and Golden Nugget Casino Promotions in different places – across "billboards," "digital media," DraftKings' "platform" and app, on television, and on social media feeds. Compl. ¶¶ 154, 156 (Fig. 1), 158, 159 (Fig. 2), 160 (Fig. 3), 161-62. Plaintiffs provide screenshots of three "example advertisement[s]" and describe one television advertisement that they claim are "like" or "substantially similar" to the advertisements they saw and relied on. *Id*. They further allege that they received direct outreach from DraftKings and Golden Nugget with targeted promotions and "custom offers." *Id*. ¶¶ 265, 298, 303. Of particular importance, they do not allege when they saw those advertisements or offers, or what they said. They also fail to allege which advertisements or offers they relied on, or that they relied on the examples provided in the Complaint. Indeed, Plaintiffs themselves admit that the "example" advertisements substantially differ because they include different terms and varying levels of disclosure. *Id*. ¶¶ 156-57, 159-61. Given the difference in content, sources, dates, and alleged level of disclosure among the example advertisements – and the additional allegations that Plaintiffs received "custom offers" and saw "multiple ads" by two different defendants over a period of five years – Plaintiffs' allegations that they relied on advertisements that they claim are substantially similar" to the examples in the Complaint is wholly insufficient to survive a motion to dismiss. *See Kamara v. Columbia Home Loans, LLC*, 654 F. Supp. 2d 259, 265 (E.D. Pa. 2009) (dismissing UTPCPL claim where "plaintiff does not distinguish among [the] defendants in setting forth the alleged violations").

Indeed, even where Plaintiffs provide even minimal detail, it undermines their claims.

---

[10] Plaintiffs allege that they saw advertisements for the Casino Promotion "shortly before" opting into that promotion. Compl. ¶ 162. Plaintiffs began betting on DK Casino and Golden Nugget Casino at various times between 2019 and 2024. *Id*. ¶¶ 41, 261, 186.

For example, the only two sample advertisements for the Casino Promotion that are dated are alleged to have run in 2022 and 2023. Compl. ¶¶ 160 (Fig. 3), 161. Alicea and Harner allege that they saw "numerous advertisements for the deceptive Casino Promotion including those described above and substantially identical advertisements." *Id*. ¶ 186. But these Plaintiffs did not even begin wagering on DraftKings and Golden Nugget's platforms until 2024, well after they allegedly could have seen the sample advertisements. *Id*. Separately, Macek began betting on DK Casino at least two years before the sample advertisements even ran. *Id*. ¶ 260. *See Bessemer*, 472 F. Supp. 3d at 180 (dismissing UTPCPL claim where plaintiff's "citations to the advertisements at issue are all dated well after the Master Agreement was entered into, and in no way indicate that the specific advertisements cited were utilized by Fiserv before the parties executed the Master Agreement.").

The No Sweat Promotion (Count 6):

The same issues plague Macek and Walker's UTPCPL claim based on the No Sweat Promotion. Compl. ¶ 423. Plaintiffs again allege numerous advertisements on television, on highways, on public transportation, on social media, and in direct emails, but do not allege that they actually saw or relied on those advertisements. *Id*. ¶¶ 194-97. The Complaint includes screenshots of what purport to be Twitter posts dated April and July 2022, an advertisement for "risk free" bets purporting to be from DraftKings' website dated April 2025 (even though they admit that DraftKings stopped using that term in 2022), an advertisement from "various digital advertising media" dated March 2024, and screenshots of the DraftKings app interface from November and December 2024.[11] *Id*. ¶¶ 196 (Fig. 4), 213 (Figs. 5-7), 216 (Fig. 8), 218 (Fig. 9), 225 (Fig. 10).

Notably, the Complaint does not even describe these as example advertisements or allege that Plaintiffs Macek and Walker saw similar advertisements. Indeed, aside from the vague

---

[11]Three of these figures are also included in all the other Loevy Class Action complaints, making clear the cookie-cutter nature of Plaintiffs' allegations concerning these advertisements. Compl. ¶¶ 196, 213 (Figs. 5-7), 216 (Fig. 8).

allegations that Walker "used deposit match and 'risk-free' promotional offers after seeing numerous advertisements on television and social media" (*id*. ¶ 40), and that Macek and Walker "opt[ed] in to the promotion on the basis of DraftKings's advertising that led them to believe they could place a bet with no risk" (*id*. ¶ 217), the Complaint does not allege that they saw any advertisements for the No Sweat Promotion at all. This is plainly insufficient. *Weinberg*, 565 Pa. at 617 (finding a private plaintiff has no claim under the UTPCPL simply "because an advertisement might deceive members of the audience").

New Customer Promotion:

The same flaws infect the New Customer Promotion UTPCPL claim (Count 7). Macek and Walker never allege what specific advertisements they saw or relied on.[12] The Complaint generally asserts that "countless Pennsylvanians" were exposed to advertisements on television, billboards and public transport in Pennsylvania, but Macek and Walker fail to identify any of these advertisements with sufficient particularity, let alone any advertisement that they allegedly saw. Compl. ¶¶ 234-35.

The only specific advertisements that Plaintiffs identify in the Complaint are two Twitter posts from 2022, and an undated screenshot purporting to be "typical" of television and digital media advertisements in Pennsylvania "during the class period." *Id*. ¶ 243 (Figs. 11-13). None of the Plaintiffs allege that they saw or relied on these (or similar) advertisements, nor could they have relied on them. Walker and Macek allege that they signed up for DK Sportsbook in 2019 and 2020, respectively – two years before the posts (and, for Walker, before DraftKings even advertised the New Customer Promotion). *Id*. ¶¶ 40-41, 234, 259.

Plaintiffs' conclusory allegations are plainly insufficient. Walker alleges that "[a]round 2019," (a year *before* DraftKings began advertising the New Customer Promotion), he "saw ads for new sportsbook user promotions including a deposit match promotion on a variety of digital platforms and . . . took the opportunity to begin sports betting." *Id.* ¶ 259. He further alleges that

---

[12] Count 7 is asserted by Macek and Walker only. Compl. ¶ 440.

he "saw advertisements for DraftKings's Sportsbook Deposit Match Promotion shortly before [he] initially deposited funds in [his] accounts on DraftKings." *Id.* ¶ 244. However, he fails to provide an example of an advertisement from 2019. Nor can he, since he admits that DraftKings has only "advertised their promises of a '1,000 Sign Up Bonus'" (that is, the New Customer Promotion) "[s]ince at least 2020." *Id.* ¶ 234. Walker fails to allege that DraftKings advertised a New Customer Promotion when he signed up for DraftKings' platform (and was thus a new customer eligible for the Promotion), and he therefore could not have relied on any advertisements for the Promotion. Macek alleges that he "learned of the sportsbook promotions from media advertisements as well as direct email and text correspondence" and "began using [] DraftKings Sportsbook . . . offerings in November of 2020." *Id.* ¶¶ 41, 260. However, he identifies no specific advertisements and fails to provide an example of an advertisement from 2020.

Even taking the allegations in the Complaint as true, Plaintiffs have utterly failed to allege what advertisements they relied upon with regard to each of the Promotions. Their failure to do so warrants dismissal. *Bessemer*, 472 F. Supp. 3d at 180 (dismissing UTPCPL claim where plaintiff "fails to allege a single instance wherein any of its members in any specific state relied on any specific representation of Fiserv.").

### (c)     Plaintiffs Do Not Plausibly Plead Reliance.

Additionally, the UTPCPL claims fail because Plaintiffs have not plausibly alleged that they relied on the advertisements in the Complaint (or on any advertisements at all). Each Plaintiff must allege reliance, i.e. that they each opted into the Promotions because they viewed and believed Defendants' allegedly false advertisements. *Aronson v. GreenMountain.com*, 2002 Pa. Super. 316, ¶ 12, 809 A.2d 399, 405 (2002). The Court may determine "even at the motion to dismiss stage, that a plaintiff's allegations of justifiable reliance fail as a matter of law." *Palek v. State Farm Fire and Cas. Ins., Co.*, 535 F. Supp. 3d 382, 391 (W.D. Pa. 2021).

As discussed above, the advertisements in the Complaint ran years before, or years after, Plaintiffs claim to have seen or relied on "similar" advertisements. Moreover, Plaintiffs admit

that they "frequently" entered the Promotions, which belies the notion that they relied on the allegedly misleading statements in the advertisements. *See, e.g.*, Compl. ¶¶ 261 (Macek was repeatedly "entice[d] back to the site with a misleading casino promotion), 263 (Macek participated in multiple promotions which he "was surprised and dismayed to discover were not actually risk-free"), *Id.* 301 ("Plaintiff Setton frequently was induced to deposit and gamble by this casino promotion"). Even assuming Plaintiffs were initially confused by the clearly-disclosed terms of the Promotions, as a matter of law, any continued reliance on the supposedly misleading promotions would no longer be reasonable after Plaintiffs discovered the true facts the first time they opted in. *McLean*, 542 F. Supp. 3d at 353 ("[i]f a man knows the truth about a representation, he is neither deceived nor defrauded, and any loss he may sustain is in effect self-inflicted."); *Corsale v. Sperian Energy Corp.*, 412 F. Supp. 3d 556, 567 n.2 (W.D. Pa. 2019) ("The reasonableness of any belief that Plaintiffs continued to have that the rates charged by Defendant Sperian Energy would be based on the wholesale market rate . . . is belied by the fact that Plaintiffs continued on as customers of Defendant Sperian Energy for over two years, despite receiving a side-by-side comparison each month showing that Defendant Sperian Energy's rates were, in Plaintiffs' words, 'substantially higher.'").

### (d) Plaintiffs Fail to Plead an Ascertainable Loss.

"[T]he UTPCPL requires that a plaintiff show that he has suffered, as a result of his justifiable reliance, an 'ascertainable loss of money or property, real or personal.'" *Corsale*, 412 at 565 (citing 73 P.S. § 201-9.2(a)). The loss asserted must be "an actual, non-speculative, loss of money or property." *Levy–Tatum v. Navient and Sallie Mae Bank*, No. CIV. A.15–3794, 2016 WL 75231, *9 (E.D. Pa. Jan. 7, 2016).

Plaintiffs fail to plead any allegations to satisfy this required element. For the Casino Promotion (Count 3), Plaintiffs allege only that they "suffered ascertainable losses" but do not specify what those losses were.[13] Compl. ¶ 401. For the No Sweat Promotion (Count 6),

---

[13] This is plainly insufficient. *Weinberg*, 565 Pa. at 618 (stating that plaintiffs must allege facts

Plaintiffs allege only monetary losses in the form of unreceived "cash refunds for bets they placed and lost[.]" *Id.* ¶ 434. For the New Customer Promotion (Count 7), Plaintiffs allege only monetary losses from unreceived "cash deposit match[es] for the funds they deposited in their DraftKings accounts." *Id.* ¶ 452. They do not allege the amount of their losses or specify whether they would have bet less or not bet at all but for the allegedly deceptive promotions. *See Weinberg*, 565 Pa. at 618 ("plaintiff must allege . . . that he purchased Ultra® because he heard and believed Sunoco's false advertising that Ultra® would enhance engine performance . . . as well as the *amount* he purchased in order to establish the amount of his ascertainable loss.") (emphasis added).

Additionally, losses related to gaming activity pose "metaphysical problems of proximate causation," as the Third Circuit recently held. *Antar*, 2025 WL 1219316, at *3 (affirming dismissal of New Jersey consumer protection claim based on allegations that online casino "calculated to mislead and deceive [customer] into continuing to deposit money and gamble on its platform" because the claim "fails on the ascertainable loss prong"). *Id.* at *2 (emphasis added). In *Antar*, the Third Circuit concluded that an online bettor had not alleged an ascertainable loss related to his gaming losses, because the court would not be able "to differentiate the losses [plaintiff] suffered as a result of the defendants' alleged conduct versus those losses [plaintiff] suffered as a natural result of [gaming.]" *Id*. The same is true here. Although Plaintiffs allege that they were at times successful in the Promotions (*see, e.g.*, Compl. ¶ 189), they are notably silent as to how any deposits made, winnings received, or rewards earned (or not earned), factor into their damage calculations for any of their claims. Their pleadings are thus plainly insufficient.

### (e)   Plaintiffs Fail to Plead a Causal Connection.

Plaintiffs do not adequately plead a causal nexus between the alleged unlawful conduct and the alleged ascertainable loss for any of the Promotions. Plaintiffs must show that they

---

establishing the alleged ascertainable loss).

"suffer[ed] an ascertainable loss *as a result of*" the defendant's conduct. *Weinberg*, 565 Pa. at 618 (emphasis in original). As explained above, DraftKings and/or Golden Nugget fully disclosed the terms of the Promotions and did not engage in any unlawful conduct under the UTPCPL. Plaintiffs make only conclusory statements regarding causation. Compl. ¶¶ 401 ("As a result of Defendant's misconduct..."), 434, 452 ("As a direct and proximate result of DraftKings's unfair and deceptive practices…") Furthermore, Macek and Setton allegedly chose to opt into the Casino Promotion and No Sweat Promotion more than once and after they were aware of the promotional requirements. *Id*. ¶¶ 261, 263, 301. Any alleged losses are the result of their fully informed decisions to continue opting into these promotions, and not any alleged deceptive conduct by DraftKings or Golden Nugget.

> **(f)      Plaintiffs Cannot Base a UTPCPL Claim (Count 6) on the Vague Term "No Sweat" Because It Is Puffery.**

Count 6 regarding the No Sweat Promotion is deficient for the additional reason that the term "no sweat" is puffery. The portion of Count 6 alleging that DraftKings' use of that term violated the UTPCPL should be dismissed. *Spear v. Fenkell*, No. CIV.A. 13-02391, 2015 WL 518229, at *1 (E.D. Pa. Feb. 6, 2015) (emphasis added) ("Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all o*r part of* an action for "failure to state a claim upon which relief can be granted.") (emphasis added).

"[O]ne who claims a violation of the UTPCPL . . . must overcome the hurdle of puffery. [] If the words used are mere puffery, they cannot be construed as deceptive." *Kovalev v. Lidl US, LLC*, 647 F. Supp. 3d 319, 352–53 (E.D. Pa. 2022) (internal citation omitted). Pennsylvania courts distinguish between "misdescriptions or false representations of specific characteristics of a product," which potentially are actionable, and statements "expressed in broad, vague, and commendatory language," which are not. *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993) (applying Pennsylvania law); *Commonw. by Shapiro,* 194 A.3d at 1023 ("Where the impression created by the [advertising] statement is one of exaggeration or overstatement expressed in broad language, it may be deemed non-actionable puffery.") The representations at

issue here – assuming Plaintiffs even saw them – are the latter.

Plaintiffs focus on the use of the term "no sweat" in the No Sweat Promotion. Compl. ¶ 80. That term is non-actionable puffery because it does not reference specific characteristics that are falsifiable, but is rather a vague statement of opinion that cannot be measured. *See Fusco v. Uber Techs., Inc.*, No. 17-00036, 2018 WL 3618232, at *7 (E.D. Pa. July 27, 2018) (finding the use of term "safe" in advertising is non-actionable puffery because "it is "a matter of opinion whether this risk would be too high to be called 'safe'"); *Perri v. Prestigious Homes, Inc.*, No. L-4169-08, 2012 WL 95564, at *3 (N.J. Super. Ct. App. Div. Jan. 13, 2012) (finding statement that "there wasn't anything to be concerned with" is nonactionable puffery).

## 2. The Common Law Fraud Claims Fail (Counts 4, 8, 9, and 10).

Plaintiffs assert common law fraud claims for intentional misrepresentation and fraudulent inducement related to each of the Promotions. These claims fail for the reasons discussed above: Plaintiffs do not plausibly allege any material misrepresentation, justifiable reliance, or causation, among other deficiencies, and they certainly fail to do so under the heightened pleading standard of Rule 9(b). The claim based on the New Customer Promotion (Count 9) is also time-barred.

### (a) Plaintiffs Fail to Meet Rule 9(b)'s Heightened Pleading Requirements.

Under Pennsylvania law, the elements of intentional misrepresentation and fraudulent inducement are: "'(1) [a] representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and, (6) the resulting injury was proximately caused by the reliance.'" *Bellardine v. Ross*, No. 17-2264, 2018 WL 3642223, at *5 (E.D. Pa. Aug. 1, 2018) (citation omitted); *Reville Tire Co. v. Ranalli*, No. 15-1036, 2017 WL 4224658, at *10 (W.D. Pa. Sept. 21, 2017). Fraud claims must satisfy the "stringent" Rule 9(b) requirements for particularity. *Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85 (3d Cir. 2015); Pa. R. Civ. P.

1019(b) ("Averments of fraud or mistake shall be averred with particularity."). Failure to plead fraud claims with the requisite particularity warrants dismissal. *See McLaughlin v. Bayer Corp.*, 172 F. Supp. 3d 804, 829 (E.D. Pa. 2016).

Like the UTPCPL claims, each of the common law fraud claims requires, *inter alia*, a material misrepresentation, justifiable reliance, and injury proximately caused by the reliance. Plaintiffs fail to satisfy these elements under the heightened pleading standard of Rule 9(b) for three independent reasons.

First, as discussed above in Section B.1(a), Plaintiffs have not alleged any misrepresentation of fact. The advertisements for the Promotions could not be misleading because Plaintiffs themselves allege that the advertisements included the material terms, and the terms of each Promotion were fully disclosed and explained the very aspects of the Promotions about which Plaintiffs allege they were confused. Second, for the reasons explained in Section B.1(b)-(c), Plaintiffs have not pled reliance with the particularity required under Rule 9(b), and they do not identify any specific advertisement they saw or relied on. *See McLaughlin*, 172 F. Supp. 3d at 829 (dismissing misrepresentation claim that "fails to include any allegations as to (1) the date on which each misrepresentation was made, (2) the precise source of certain of the misrepresentations, or (3) the circumstances under which each Plaintiff encountered each misrepresentation" and "only baldly alleges that Plaintiffs 'justifiably relied on the misrepresentations' and 'would have never had Essure implanted had [they] been aware of the falsity of the representations.'") (citation omitted). Third, as discussed in Section B.1(e), Plaintiffs do not adequately plead a causal nexus between the alleged unlawful conduct and the alleged losses for any of the Promotions. Thus, the Complaint fails to state a claim for common law fraud.

### (b) The New Customer Promotion Fraud Claim (Count 9) Is Time-Barred.

Plaintiffs' fraud claim based on the New Customer Promotion is time-barred. The statute of limitations for fraud claims in Pennsylvania is two years. *Briggs v. Macy's Inc.*, 329 F.R.D.

82, 87 (M.D. Pa. 2018). Although the Complaint does not specify which of the Plaintiffs bring this claim, only Plaintiffs Macek, Walker, and Setton are alleged to have participated in the New Customer Promotion or wagered on DK Sportsbook, and they purportedly created their DraftKings accounts – and were thus new customers eligible for the New Customer Promotion – in 2019 and 2020. *See* Compl. ¶¶ 40, 41, 43. Count 9 is therefore time-barred and should be dismissed.

### C.     The Unjust Enrichment Claim Fails (Count 11).

Plaintiffs fail to state a claim for unjust enrichment for two independent reasons. First, the claim is derivative of the UTPCPL and common law fraud claims and must be dismissed along with them. Second, Plaintiffs admit that they received and used the services they complain about.

Unjust enrichment may be pleaded either as an alternative to breach of contract or as a companion to an underlying tort claim. *Plumbers' Loc. Union No. 690 Health Plan v. Apotex Corp.*, No. CV 16-665, 2017 WL 4235773, at *10 (E.D. Pa. Sept. 25, 2017). Pennsylvania defines unjust enrichment as "the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and for which the beneficiary must make restitution." *Roethlein v. Portnoff L. Assocs., Ltd.*, 623 Pa. 1, *16 n.8 (Pa. 2013). To prevail on an unjust enrichment claim, plaintiffs must show that: (1) they conferred a benefit on defendants; (2) defendants received the benefits; and (3) defendants accepted the benefits under circumstances that make it inequitable for defendants to retain the benefit without paying value for it. *See Karden Constr. Servs., Inc. v. D'Amico*, 219 A.3d 619, 628 (Pa. Super. Ct. 2019).

Here, Plaintiffs unjust enrichment claim is not pled as an alternative to breach of contract, but rather as a companion to the underlying tort claims. Plaintiffs' unjust enrichment claim fails because it is based on the same alleged improper conduct that forms the basis of their consumer protection and fraud claims. *See Plumbers'*, 2017 WL 4235773, at *10–11 (deceptive conduct claims under the UTPCPL are characterized as torts). "Where the unjust enrichment claim rests on the same improper conduct as the underlying tort claim, the unjust enrichment claim will rise

or fall with the underlying claim." *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 493 (E.D. Pa. 2016). "[A]n unjust enrichment claim based on wrongful conduct cannot stand alone as a substitute for the failed tort claim." *Id.*

The claim further fails because Plaintiffs participated in the Promotions and received the service they complain about. A plaintiff cannot sustain a claim for unjust enrichment where they received and used the product or service complained of. *See, e.g. Tatum v. Takeda Pharms. N. Am. , Inc.*, No. 12-1114, 2012 WL 5182895, at *5 (E.D. Pa. Oct. 19, 2012) (finding that the plaintiff's claim that the defendants were aware of the risks of the drug but chose not to disclose them failed to state a claim for unjust enrichment because there was no allegation that the defendants "refused to provide a service or goods after [plaintiffs] provided defendants with a benefit"); *Zafarana v. Pfizer, Inc.*, 724 F. Supp. 2d 545, 561 (E.D. Pa. 2010) (dismissing unjust enrichment claim where plaintiffs alleged that defendants misled them into desiring a product, which they then provided to plaintiffs in exchange for payment).

Defendants did not fail to provide the service for which Plaintiffs paid. In exchange for their deposits, Plaintiffs received the opportunity to participate in the Promotions and wager on DraftKings' and Golden Nugget's platforms. They did not receive a "worthless" product or service; rather, they "received exactly what [they] thought [they were] purchasing a gambling experience where winning was not guaranteed." *Antar*, 2025 WL 1219316, at *3. Thus, Count 11 fails to state a claim and must be dismissed.

### D.      The Conversion Claim Fails (Count 13).

"[U]nder Pennsylvania law, conversion is the deprivation of another's right of property, or use or possession of a chattel, or other interference therewith, without the owner's consent and without legal justification." *Universal Premium Acceptance Corp. v. York Bank & Tr. Co.*, 69 F.3d 695, 704 (3d Cir. 1995) (internal quotation marks and citation omitted). Plaintiff Setton fails to adequately allege that he is lawfully entitled to—or that DraftKings acted without legal justification in retaining—the alleged account funds at issue. The Complaint merely asserts in a conclusory fashion that "DraftKings has no lawful justification to retain the $45,000 that Plaintiff

Setton deposited in his account or won with money that he deposited in his account and that belongs to him." Compl. ¶ 516. Plaintiff Setton makes no attempt to explain the factual basis for his conclusions that the funds at issue lawfully "belong[] to him" and that "DraftKings has no lawful justification to retain" them. *Id.* This Court has made clear that such threadbare allegations concerning conversion of account funds fail to satisfy the federal notice pleading standard because they "do not rise above the speculative level . . . even when liberally construed." *See Roach v. Navy Fed. Credit Union*, No. 24-CV-6408, 2025 WL 257128, at *4 (E.D. Pa. Jan. 21, 2025) (dismissing conversion claim with prejudice because plaintiff "offer[ed] no factual support for his conclusion that [defendant] 'wrongfully restricted access' to his accounts and 'subsequently utilized' his funds without authorization"). Thus, Setton fails to state a claim for conversion and it must be dismissed.

E.    **Plaintiffs Lack Standing to Seek Injunctive Relief.**

Plaintiffs purport to seek unspecified injunctive relief without a showing of imminent future harm. Compl. ¶¶ 438-39, 455-56. A plaintiff seeking injunctive relief bears the burden of establishing that they are likely to suffer future injury from the defendant's conduct." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d at 292 (internal quotation marks and citations omitted). Plaintiffs who have become aware of alleged misrepresentations are not in danger of being deceived by them again. *See id.* ("Because Estrada makes clear in this very lawsuit that she is well aware of health risks associated with using Baby Powder, we readily conclude that she is not likely to suffer future economic injury.") Were Plaintiffs to enter any of the Promotions now, they could not claim to be deceived or harmed. They therefore lack standing to seek injunctive relief.

VII.    **CONCLUSION**

The Court should grant Defendants' Motion to Dismiss and dismiss each and every claim in the Complaint without leave to amend. Defendants request oral argument on this Motion.

Dated:  June 24, 2025                    By: */s/  Melissa L. Perry*

Michael J. Engle (PA ID  85576)
Melissa L. Perry (PA ID 326984)
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
Telephone: (215) 564-8000
Email:        mengle@stradley.com
                   mperry@stradley.com

Richard R. Patch *(admitted pro hac vice)*
Clifford E. Yin *(admitted pro hac vice)*
Christopher J. Wiener *(admitted pro hac vice)*
Sarah E. Peterson *(admitted pro hac vice)*
Laura Seegal *(admitted pro hac vice)*
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: 415-391-4800
Facsimile:  415-989-1663
Email:        ef-rrp@cpdb.com
                   ef-cey@cpdb.com
                   ef-cjw@cpdb.com
                   ef-sep@cpdb.com
                   ef-lrs@cpdb.com

*Attorneys for Defendants DraftKings Inc. (erroneously
sued as "DraftKings, Inc."); Crown PA Gaming Inc. d/b/a
DraftKings; Golden Nugget Online Gaming LLC*

## CERTIFICATE OF MEET AND CONFER/NON-CONCURRENCE

The parties met and conferred by video conference on June 18, 2025 and were unable to resolve the issues raised in this Motion.

## CERTIFICATE OF USE OF GENERATIVE AI

No portion of the brief, including legal or factual citations, was generated by any Generative AI program. ChatGPT was used only to assist in editing the brief. A person has checked the accuracy of all citations and legal authority.

## CERTIFICATE OF SERVICE

I, Melissa L. Perry, hereby certify that on June 24, 2025, I caused a true and correct copy

of the foregoing to be served on all counsel of record by ECF.

*/s/Melissa L. Perry*
Melissa L. Perry